J-S60019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN MUCCI A/K/A GIOVANNI ROBERT MUCCI | |
| Appellant | No. 3455 EDA 2014 |

Appeal from the Judgment of Sentence November 25, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0007521-2012

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:          **FILED NOVEMBER 04, 2015**

John Mucci, a/k/a Giovanni Robert Mucci, appeals *pro se* from the judgment of sentence entered in the Court of Common Pleas of Montgomery County after a jury convicted him of aggravated assault/serious bodily injury,[1] simple assault[2] and recklessly endangering another person.[3]  Upon review, we affirm, primarily on the basis of the comprehensive opinion authored by the Honorable Garrett D. Page.

Mucci's convictions stem from a work-related incident in which Mucci struck a co-worker in the head with a padlock wrapped in a bandanna

---

[1] 18 Pa.C.S.A.§ 2702(a)(1).

[2] 18 Pa.C.S.A. § 2701(a)(1).

[3] 18 Pa.C.S.A. § 2705.

following an argument over the rights to scrap wire. Mucci represented himself at a jury trial, which took place between July 28 and 31, 2014. After the jury found him guilty of the above charges, the trial court sentenced Mucci to an aggregate sentence of 10 to 20 years' imprisonment followed by two years of probation. Mucci's post-sentence motions were denied and this timely appeal follows,[4] in which Mucci raises the following issues,[5] *verbatim*:

1. Whether the Commonwealth committed reversible error when they admitted evidence of [Mucci's] pre-arrest silence?

2. Whether the Commonwealth committed reversible error by addressing [Mucci's] post-arrest silence?

3. Whether the trial court abused [its] discretion in allowing the Commonwealth to admit into evidence a demonstrative lock and handkerchief that was allegedly used by [Mucci] and whether the trial court erred in allowing the Commonwealth to use as evidence, alleged pictures of the victim's injuries?

4. Whether the Commonwealth committed reversible error by admitting evidence regarding a challenged pre-trial lineup?

5. Whether the Commonwealth committed reversible error by not disclosing evidence that was favorable to [Mucci]?

6. Whether the [c]ourt imposed an illegal sentence upon [Mucci] by imposing a mandatory minimum sentence?

---

[4] We note that Mucci filed his notice of appeal prior to the date on which his post-sentence motions were denied by the trial court. Pursuant to Pa.R.A.P. 905(a)(5), "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."

[5] We have renumbered certain of Mucci's claims for ease of disposition.

7. Whether the evidence presented was sufficient to convict?

8. Whether the verdict was against the weight of the evidence?

Brief of Appellant, at 5.

Mucci's first three assignments of error concern the trial court's admission of evidence. Our standard of review with regard to such claims is well-settled:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa. Super. 2014) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* "An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant." *Id.* at 750.

Mucci first asserts that the trial court erred by admitting evidence of his pre-arrest silence.[6] Specifically, Mucci objects to a statement by Officer Brian Richard on direct examination that, prior to his arrest, Mucci declined Officer Richard's request to speak with him.

Both the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution protect an individual's right not to be compelled to be a witness against himself. *Commonwealth v. Lettau*, 986 A.2d 114, 117 (Pa. 2009) (citation omitted); *see also Miranda v. Arizona*, 384 U.S. 436 (1966). The Commonwealth may not use pre-arrest silence as substantive evidence of guilt when a defendant chooses not to testify. *Commonwealth v. Molina*, 33 A.3d 51, 63 (Pa. Super. 2011). Nevertheless, "an appellant can open the door to the Commonwealth using his or her pre-arrest silence under the 'fair-response doctrine' even when the appellant does not testify." *Commonwealth v. Fischere*, 70 A.3d 1270, 1278 (Pa. Super. 2013).

Here, the trial court concluded that Mucci's claim fails for three distinct reasons: (1) he waived the issue by failing to make a timely objection; (2)

_____

[6] In his statement of questions involved, Mucci also raises a claim regarding the alleged improper statements by the Commonwealth regarding his post-arrest silence. However, as the Commonwealth correctly notes in its counterstatement of questions involved, Mucci fails to develop any argument on this issue. Accordingly, the claim is waived. *See* Pa.R.A.P. 2119(a); *Commonwealth v. Burton*, 770 A.2d 771 (Pa. Super. 2001) (failure to develop argument results in waiver). Even if Mucci had not waived this claim, it would be meritless for the reasons set forth in Judge Page's opinion.

his opening statement "opened the door" to fair response by the Commonwealth; and (3) the testimony regarding Mucci's pre-arrest silence was not offered as evidence of his guilt. Upon review of the record in this matter, in particular the trial transcripts, as well as the briefs of the parties and the applicable law, we conclude that the trial court has thoroughly and accurately disposed of this issue. Accordingly, we affirm on the basis of Judge Page's opinion.

Mucci next asserts that the trial court erred in admitting the demonstrative evidence of the Master lock and bandanna. He also asserts that the court erred in allowing the Commonwealth to admit photographs of the victim's injuries because, he claims, they were not properly authenticated.[7]

Demonstrative evidence is tendered for the purpose of rendering other evidence more comprehensible to the trier of fact may and may be admitted if its relevance outweighs any potential prejudicial effect. **Commonwealth v. Serge**, 896 A.2d 1170, 1176 (Pa. 2006). The offering party must authenticate such evidence, which may be accomplished by the presentation of other evidence, such as witness testimony, sufficient to support a finding

---

[7] In the argument portion of his brief, Mucci also argues that the photographs were prejudicial and inflammatory and also "because of the prosecutorial misconduct where the prosecutor failed to turn over this exculpatory evidence in a timely fashion." Brief of Appellant, at 23. None of these objections were raised at trial and, accordingly, are waived.

that the matter in question is what its proponent claims. *Id.*; *see* Pa.R.E. 901(a). The overriding principle in determining if any evidence, including demonstrative, should be admitted involves a weighing of the probative value versus prejudicial effect. *Serge*, *supra*. The trial court must decide first if the evidence is relevant and, if so, whether it is more probative than prejudicial. *Commonwealth v. Hawk*, 709 A.2d 373, 376 (Pa. 1998).

With regard to the pictorial evidence of the victim's injuries, it is well-settled that:

> A photograph must be verified either by the testimony of the person who took it or by another person with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time of the accident, or if there is a difference or change, the difference or change is specifically pointed out and is readily capable of being clearly understood and appreciated by the jury[.]

*Commonwealth v. Braithwaite*, 385 A.2d 423, 426 (Pa. Super. 1978) (citations omitted).

Here, the trial court concluded that both the padlock/bandanna and the photographs were properly authenticated by witnesses at trial and the question whether either exhibit represented what it was purported to represent was a question of fact for the jury to weigh. We rely on Judge Page's opinion in finding this claim to be without merit.

Mucci next alleges that the trial court erred by admitting evidence regarding a pre-trial photographic lineup. Specifically, the victim made

reference to the fact that the police had asked him to come down to the station and view a photo lineup.[8] Mucci asserts that the reference to the lineup was: (1) unnecessary, as his identity was not in dispute and (2) prejudicial because "the jury could possibly make the inference that he was 'in the system' so to speak, which would show that [he] was either arrested or convicted [previously]." Brief of Appellant, at 19.

In its opinion, the trial court concluded that, although the photo lineup was irrelevant to the Commonwealth's case and the testimony was therefore improper, Mucci was not prejudiced by the victim's reference to the lineup and, therefore, its admission was harmless error. Because the reference was fleeting, we agree that there is no reasonable probability that the error contributed to Mucci's conviction. *See Commonwealth v. Wood*, 637 A.2d

---

[8] The brief exchange between counsel for the Commonwealth and the victim was as follows:

> Q: So when did you go to the police station?
>
> A: After being released from Mercy Suburban, I returned home to Westville. At that point, an officer from the Whitpain Township police contacted my telephone and asked me if I could come back to look at a lineup, a photo lineup to identify the defendant.

N.T. Trial, 7/29/14, at 37. The Commonwealth immediately moved on after Mucci objected. Although Mucci claims that the trial court had previously instructed the Commonwealth to refrain from making any reference to the photo lineup, this assertion is incorrect. At a hearing on pre-trial motions, the trial court deferred ruling on Mucci's motion to exclude the lineup, indicating only that it was "leaning towards not letting it in." N.T. Pre-Trial Motions Hearing, 7/23/14, at 72.

1335, 1351 (Pa. Super. 1994). Accordingly, we affirm on the basis of the trial court's analysis.

Next, Mucci claims that the Commonwealth committed a ***Brady***[9] violation by not disclosing evidence that was favorable to him. Mucci asserts that the Commonwealth failed to turn over video from a nearby Giant grocery store showing him "calmly walking up and down aisles searching for first aid care, which is contrary to the Commonwealth's theory that [Mucci] immediately fled the scene." Brief of Appellant, at 34.

Under ***Brady*** and subsequent decisional law, the Commonwealth has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. ***Commonwealth v. Roney***, 79 A.3d 595, 607 (Pa. 2013), citing ***Commonwealth v. Hutchinson***, 25 A.3d 277, 310 (Pa. 2011). To establish a ***Brady*** violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. ***Id.*** However, "[n]o ***Brady*** violation can occur where the evidence is available to the defense through non-governmental sources, or, with

---

[9] ***Brady v. Maryland***, 373 U.S. 83 (1963).

reasonable diligence, the defendant could have discovered the evidence." ***Commonwealth v. Carson***, 913 A.2d 220, 245 (Pa. 2006).

Here, the trial court concluded that the evidence in question: (1) was not suppressed by the Commonwealth; (2) was equally available to the defense through non-governmental sources, i.e., Giant grocery store; (3) was not exculpatory; and (4) would not have affected the outcome of the trial. We agree with the trial court's analysis and affirm on that basis.

Next, Mucci claims that his sentence was illegal and unconstitutional under ***Alleyne v. United States***, 133 S.Ct. 2151 (2013), which held that any fact triggering the imposition of a mandatory minimum sentence must be treated as an element of the offense, submitted to the jury, and proved beyond a reasonable doubt. Mucci is entitled to no relief.

Here, Mucci received a mandatory minimum "second strike" sentence under section 9714(a) of the Sentencing Code, which provides, in relevant part:

> Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. . . .

42 Pa.C.S.A. § 9714(a). Because Mucci had been previously convicted of robbery and burglary, defined as crimes of violence under section 9714(c), his instant conviction for aggravated assault constituted a second strike under the statute and he was sentenced accordingly.

In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the Supreme Court held that the fact of a prior conviction was not an element of the crime required to be charged in the indictment. In *dicta*, the Court noted that the defendant

> makes no separate, subsidiary, standard of proof claims with respect to his sentencing, perhaps because he admitted his recidivism at the time he pleaded guilty and would therefore find it difficult to show that the standard of proof could have made a difference to his case. Accordingly, we express no view on whether some heightened standard of proof might apply to sentencing determinations which bear significantly on the severity of sentence.

*Id.* at 247. However, in subsequent cases addressing the Sixth Amendment and Due Process implications of facts increasing the prescribed range of penalties, the Court left the prior-conviction exception intact. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne*, *supra*. Accordingly, proof of Mucci's prior convictions was not required to be placed before the jury and his sentence is not illegal.

Mucci next challenges the sufficiency of the evidence to support his convictions.

> In challenges to the sufficiency of the evidence, our standard of review is *de novo*, however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. Evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt. The evidence does not need to disprove every possibility of innocence, and doubts as to guilt, the credibility of witnesses, and the weight of the evidence are for the fact-finder to decide. We will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law

- 10 -

no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Forrey*, 108 A.3d 895, 897 (Pa. Super. 2015) (internal citations and quotation marks omitted).

Upon review of the record, the briefs and the relevant law, we conclude that Judge Page thoroughly and correctly addresses this claim in his opinion, and we affirm on that basis.

Finally, Mucci asserts that the verdict was against the weight of the evidence. Our standard of review of such a claim is as follows:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [as to whether] the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted). Moreover,

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Best*, 2015 Pa. Super. LEXIS 409, *25 (Pa. Super. 2015) (internal citations and quotation marks omitted).

Here, the trial court reviewed the evidence adduced at trial and found that "[v]ery little of the testimony was contradictory and favorable to [Mucci]." Trial Court Opinion, 2/10/15, at 28. Accordingly, the court concluded as follows:

> Given the amount of uncontradicted evidence presented by the Commonwealth that [Mucci] was the sole aggressor, the severity of the injuries sustained by [c]omplainant, [Mucci's] potential access to the truck after the altercation, and Fred[ Mignogna's] testimony that he heard Shawn say to [Mucci], "What did you hit [complainant] with?" at the time of the incident, the undersigned did not find . . . the verdict of guilty to be shocking to one's sense of justice.

*Id.*

Upon review of the record, we can discern no abuse of discretion on the part of the trial court in concluding that the verdict was not against the weight of the evidence.

Judgment of sentence affirmed.[10]

_____

[10] As we have affirmed in large part on the basis of Judge Page's opinion, the parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/4/2015</u>

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :
    :
    :    No. 7521-2012

vs.    :
    :    3381 EDA 2014

GIOVANNI MUCCI     :

**OPINION OF THE COURT**

Page, J.                                   *February 10, 2015*

## FACTS AND PROCEDURAL HISTORY

On November 26, 2012, Appellant Giovanni (John) Mucci was charged with Aggravated Assault/Serious Bodily Injury (18 Pa.C.S.A. § 2702(a)(1)), Aggravated Assault/Bodily Injury with a Deadly Weapon (18 Pa.C.S.A. § 2702(a)(4)), Possessing Instruments of Crime (18 Pa.C.S.A. § 907(a)), Simple Assault (18 Pa.C.S.A. § 2701(a)(1)), and Recklessly Endangering Another Person ("REAP") (18 Pa.C.S.A. § 2705). Appellant represented himself before a jury at the ensuing trial which took place between July 28, 2014 and July 31, 2014. The jury was presented with the following evidence:

On September 5, 2012, Appellant was employed as a contractor at "G" World incorporated. Also employed were Brian Goodwin (hereinafter "Complainant") and Shawn Goodwin, father and son. It was Complainant's first day on the job, and the crew was charged with doing demolition work on what was once a Blockbuster Video and soon to be a Pet Supplies Plus. Also present were two of the crew's supervisors, Fred Mignogna and Keith Linker. Complainant, the Commonwealth's first witness, testified that on his first day of work, he asked Keith if he was able to salvage the scraps of copper wire from the worksite for their

resale value. He was told that he could not, as the company policy was for the company to retain the scraps. Complainant testified that he did not converse with Appellant that day regarding the scrap wire.

The next day, September 6, 2012, at around 6:30am, Complainant arrived at the worksite with his son, Shawn. Appellant had arrived with Fred in the company truck, which was parked about twenty feet away from the Goodwin's vehicle. Complainant testified that while Fred was away from his truck, Complainant and Shawn approached Fred's truck to gather their tools for the day. Appellant started an argument with Complainant about the rights to the scrap wire, blaming Complainant for inquiring about it the day before. Towards the end of the disagreement, Appellant said, "You don't know who I am," to which Complainant responded, "I've probably forgotten more than you know." Trial Tr. 20:4-19, July 29, 2014.

After the verbal exchange, Complainant looked away to continue gathering tools, and was caught unawares when Appellant struck him on the left side of his head. Complainant testified that he felt one hit and became "shaken and woozy," and that "it was only afterwards I felt the other ones." *Id.* at 22:3-6. Complainant never testified exactly how many times he was struck by Appellant. Complainant then pushed Appellant towards the open door of the truck, and saw Appellant discard onto the passenger floor a Master padlock wrapped in a bandana, which unraveled onto the floor. (A demonstrative padlock and bandana were admitted into evidence as C-2 and C-3 and published to the jury.) Complainant defensively wrapped his arms around Appellant, and both Shawn and Fred intervened to break up the fight. Once the parties separated, Complainant testified that Appellant, while walking away, said to him, "Do yourself a favor, don't pursue this, do not call the police." *Id.* at 30:18-19.

2

Complainant testified that he and Shawn left the scene, but returned after calling 911. Police took photographs of the area (admitted as C-1) and of Complainant's injuries (admitted as C-4 through C-7). The photographs showed that there was blood on his ear and that his shirt was torn.

Complainant then went to the hospital and received stitches in his ear. His jaw was broken.[1] Screws were inserted into his gums and his jaw was wired shut, which restrained him to a diet of liquid foods for thirty-one days. The medical records from the hospital that day and his subsequent visits to medical facilities were admitted as C-15 to C-17. Sometime after the hospital, Complainant went to a police station, where more pictures taken (C-8 through C-10), showing a contusion and slight cut on his ribcage. When he returned home that day, Complainant's wife took more photographs of his injuries (C-11 through C-14).

On cross-examination, Complainant said he may have told the officer on the scene that he believed Appellant "may [have been] or were coming back to the job site for the wire." Trial Tr. 59:11-12, July 29, 2014, but also that "I never said that your [sic] were thinking of taking the wire." *Id.* at 60:15-16, and then "My statement was I didn't say you were stealing it, I said you had other motives for the wire at the time." *Id.* at 64:2-4. Appellant also confronted Complainant with a statement that Complainant made to a Sergeant Fennerty directly after the incident (admitted as D-1), in which Complainant said that he had been hit once, and his medical records which indicated that he told medical personnel that he had been hit in the jaw, the ribs, and the skull.

Shawn Goodwin, Complainant's son, was next to testify. He corroborated his father's story that on September 5, 2012, Complainant asked Keith if he was able to retain the scrap metal, and was told that he could not. On September 6, 2012, after arriving to the job site with

---

[1] Complainant suffered a fractured left mandible.

3

his father and approaching Fred's truck to retain tools, he heard Appellant begin an argument with Complainant about the scrap wire, and saw Appellant retrieve something from his back pocket and take a swing at Complainant. Shawn did not know at the time whether his father was struck. Shawn tried to break up the fight, but Appellant resumed the attack. Shawn saw Complainant "bear-hug" Appellant, who was still swinging the bandana. Fred ran over to the group and pulled Appellant away. Shawn saw Appellant throw the bandana on the floor of the truck, and saw a padlock tumble out. Shawn testified that Fred told them that they were all fired and should leave, and that Appellant was yelling at them not to call the police.

Keith Linker testified that on September 5, 2012, Complainant asked him about the scrap metal, which Keith said was a common occurrence on any laborer's first day. Towards the end of the day, Keith saw both Complainant and Appellant standing next to the scrap pile, having some sort of argument. Keith could not hear what the argument was about, and it did not escalate.

On September 6, 2012, Keith arrived on the worksite after the altercation had occurred and the Goodwins had left the scene. Keith testified that Appellant had a small cut, and that Appellant asked about where to get a new t-shirt, as his was ripped and had blood on it. Keith advised Appellant to go to the Giant supermarket in the same strip mall.

Fred Mignogna testified that he left work early on September 5, 2012, and did not observe any of the parties discuss scrap metal or get into any arguments. On September 6, 2012, he drove Appellant to the site and was away from the truck, setting up the worksite, when he heard a scuffle. He described the scene as "three people going at it." Trial Tr. 28:5-6, July 30, 2014. He also heard Shawn say to Appellant, "What did you hit him with?" *Id.* at 41:21. Fred pulled Shawn away, and then inserted himself between Complainant and Appellant.[2] He heard Shawn say to Appellant, "My boys from North Philly will be down to get you." *Id.* at 36:4-5.

---

[2] Fred testified that Shawn was pulled off first because he was "on top of the pile." Trial Tr. 35:20, July 30, 3014.

4

Fred did not witness anyone throw a punch or see any weapons. He observed some blood on Appellant, but wasn't sure whose blood it was. He told all three workers to leave the premises. Appellant left a small backpack in Fred's truck. After the police arrived, Fred called Appellant, who did not return to the site. Fred testified that the Goodwins' vehicle had been parked approximately twenty-five to thirty feet away from his truck.

Officer Brian Richard, the final witness, testified that when he arrived on the scene, he interviewed the Goodwins and Fred Mignogna. He located a bag belonging to Appellant in Fred's truck, but no padlock or bandana were recovered. He searched the area for other witnesses, but found none. He searched the Giant for Appellant, but Appellant could not be located. He received a call from Appellant at approximately 9:00am, but Appellant did not return to the scene.

Appellant did not testify or call any additional witnesses for his defense. The jury returned a verdict of guilty for the charges of Aggravated Assault, Simple Assault, and REAP. The jury found Appellant not guilty of Aggravated Assault with a Deadly Weapon and of Possessing Instruments of Crime. Accordingly, Appellant was sentenced on November 5, 2014, to ten to twenty years imprisonment and two years of concurrent probation, and was ordered to pay restitution. Appellant, still acting *pro se*, filed several post-sentence motions for relief, which were denied, and filed notice of the instant appeal on December 9, 2014.

5

## ISSUES

In his Statement of Matters Complained of on Appeal, Appellant contends the following:

1) The defendant's rights were violated when the prosecutor committed reversible error when she introduced evidence of defendant's pre-arrest silence. This is a violation to [sic] Article 1 Section 8 and 9 of the Pennsylvania Constitution and to [sic] the 4th, 5th, 6th and 14th Amendments of the United States Constitution.

2) The defendant's rights were violated when the prosecutor committed reversible error when she introduced evidence of defendant's post-arrest silence. This is a violation to [sic] Article 1 Section 8 and 9 of the Pennsylvania Constitution and to [sic] the 4th, 5th, 6th, and 14th Amendments of the United States Constitution.

3) The Court abused its discretion when they [sic] allowed certain evidence to be admitted that was prejudicial and inflammatory. Specifically, defendant argues that the Court should not have allowed the Commonwealth to admit a demonstrative lock and hankerchief [sic] that was allegedly used by the defendant as well as photographs of the victims [sic] injuries that were never authenticated, timed or dated. This is a violation to [sic] Article 1 Section 8 and 9 of the Pennsylvania Constitution and to [sic] the 4th and 14th Amendments of the United States Constitution.

4) The defendant argues that there was insufficient evidence to sustain a conviction for the charges of Aggravated Assault, Simple Assault and Recklessly Endangering Another Person. Defendant argues that the Commonwealth did not prove beyond a Reasonable Doubt that he acted with the intent and recklessness that is required to sustain a conviction. Defendant also argues that the Commonwealth did not prove beyond a Reasonable Doubt that he did not act in self-defense. This is a violation to [sic] Article 1 Section 8 and 9 of the Pennsylvania Constitution and to the 4th and 14th Amendments of the United States Constitution.

5) The defendant did not receive a fair trial in that the verdict was against the weight of the evidence. The Commonwealth did not meet the burden of establishing the appropriate mens rea (intent) that is necessary to sustain a conviction for aggravated and simple assault nor did they meet the burden of establishing the required element of recklessness that needs to be proven to sustain a conviction for recklessly endangering another person. This is a violation to [sic] Article 1 Section 8 and 9 of the Pennsylvania Constitution and to the 4th and 14th Amendments of the Pennsylvania Constitution.

6) The defendant argues that the prosecutor committed reversible error when she introduced evidence of a pre-trial photo lineup that was presented to the victim at the police station. This was prejudicial to the defendant and played a factor in the jury's decision. This was a violation to [sic] Article

6

1 Section 8 and 9 of the Pennsylvania Constitution and to [sic] the 4th and 14th Amendments of the United States Constitution.

7) The defendant argues that his rights were violated when it was revealed that the Affiant and Commonwealth did not make defendant aware that evidence existed that was favorable to his defense. This is a violation to [sic] Article 1 Section 8 and 9 of the Pennsylvania Constitution and to [sic] the 4th, 6th, and 14th Amendments of the United States Constitution.

8) The defendant argues that his rights were violated when the trial Court refused to grant him a mistrial when he objected to the presentation of his pre-arrest and post-arrest silence as well as when it was brought to the attention of the trial Court that the Affiant and the Commonwealth were aware of favorable evidence to the defendant and failed to disclose this to the defendant. This is a violation to [sic] Article 1 Section 8 and 9 of the Pennsylvania Constitution and to [sic] the 4th, 5th, 6th, and 14th Amendments of the United States Constitution.

9) On November 25th, 2014, defendant was sentenced to serve a minimum sentence of at least 10 years in a state correctional institution. Defendant argues that the imposition of the mandatory minimum sentence is unconstitutional under the precedent of Alleyne vs. United States 133 S.Ct. 2151, 186 L. Ed. 2d. 314 (2013) in that

   a) Pennsylvania maintains that the defendant does not have to be notified prior to conviction that the Commonwealth would be looking to impose a mandatory sentence. Alleyne says that they do.

   b) That a judge must determine the applicability of the mandatory sentence by a preponderance of the truth. Alleyne says that a jury must determine the applicability of the mandatory sentence beyond a reasonable doubt.

   c) Pennsylvania maintains that a defendant does not have to be charged with a crime whose statute includes the element that would trigger the mandatory sentence. Alleyne says that they must.

   d) Pennsylvania's repeat offender statute doesn't consider merely prior conviction but violent prior convictions. To that extent, Alleyne does arguably render repeat felon mandatory sentences unconstitutional insofar as the statute depends upon the character of the crime.

10) Defendant maintains that he should not be held to pay restitution in that the attached hospital bills were not introduced into evidence during the trial.

This opinion will not address Appellant's eighth issue, as it is redundant with Appellant's first, second, and fourth issues.

7

## ANALYSIS

I. **Officer Richard's reference to Appellant's pre-arrest silence did not violate Appellant's rights.**

Appellant asserts that his right against self-incrimination was violated during direct examination of Officer Richard, who testified that prior to Appellant's arrest, Appellant refused to answer the officer's questions about the event because Appellant wanted to speak to a lawyer.[3] Appellant made no objection during the testimony, and on cross-examination pressed the officer for further details.[4] At the close of the Commonwealth's case in chief, Appellant made a motion for mistrial based on this portion of the officer's testimony, which was denied. Trial Tr. 76-80, July 30, 2014. Appellant renewed his objection in a post-sentence motion.

To the extent that Appellant's challenge involves a constitutional right, it is a question of law. Therefore, the appellate court's standard of review will be de novo, and its scope of review will be plenary. *Commonwealth v. Adams*, 104 A.3d 511, 517 (Pa. 2014).

---

[3] Officer Richard's testimony on direct examination included the following:
> I asked him if he would come in and speak to me, I would like to get his side of the story because I only had the one half of the story from the one side of the disturbance, and to gather all the information I had to get both sides of the story. And he said – he refused, and he said he wanted to speak to his lawyer and that he would contact me at a later date and I had to – I didn't hear from him.

Trial Tr. 47-48, July 30, 2014. On direct examination, Fred Mignonga also testified to the following:
> I told him that they wanted him to come back [to the job site] and explain what happened. He said no, he didn't trust them.

*Id.* at 30:13-15.

[4] During Appellant's cross-examination of Officer Richard, the following exchange transpired:
> Q: Isn't it true that I called your personal cell phone and told you that they jumped me and this whole thing was because they were the ones trying to steal the wire?
> A: I don't know if you called the station. I believe you called the station.
> Q: I think I spoke with you on your cell phone.
> A: Did you? Okay.
> Q: And I proclaimed my innocence and I told you that I was going to turn myself in, correct? Isn't that correct?
> A: It has been awhile, so [sic]. I remember asking you to come in and give your side of the story, you refused and told me you wanted to speak to a lawyer. And that was pretty much the extent of the conversation.

*Id.* at 59.

8

Appellant's argument fails for three reasons: he waived the issue by failing to make a contemporaneous objection, his opening statement "opened the door" for the testimony, and the testimony regarding Appellant's pretrial silence did not imply a tacit admission of guilt. First, it is "well-settled that a defendant's failure to object to allegedly improper testimony at the appropriate stage in the questioning of the witness constitutes waiver." *Commonwealth v. Molina*, 33 A.3d 51, 55 (Pa. Super. Ct. 2011) (quoting *Commonwealth v. Redel*, 484 A.2d 171, 175 (1984)), *aff'd*, 104 A.3d 430 (Pa. 2014). For example, in *Commonwealth v. Molina*, the defendant refused to cooperate with investigators, and the Commonwealth instructed the jury members during its closing argument that they should consider that factor to conclude the defendant was guilty. *Id.* The defendant properly objected to the prejudicial statements made during the Commonwealth's closing argument. *Id.* However, the Superior Court found, and the Supreme Court affirmed, that the defendant's lack of objection during the direct examination of the detective waived any challenge to the testimony itself. *Id.* at 55-56.

In the instant case, Appellant failed to object during the course of direct examination of Officer Richard.[5] Instead, during cross-examination, Appellant recalled the pre-arrest conversation and attempted to expound upon it. Appellant therefore waived his right to challenge the testimony.

Second, Appellant opened the door for testimony regarding his pre-arrest statements to the police during his opening argument. In *United States v. Robinson*, defense counsel, during his closing argument, asserted that the government had not allowed the defendant to tell his side of

---

[5] In his post-sentence motion, Appellant claims he made a timely objection which was "sustained" by the Court. Appellant in fact made no objection during the officer's testimony, but first made a motion for mistrial after the Commonwealth rested and the jury was recessed. Trial Tr. 70, July 30, 2014.

9

the story.[6] 485 U.S. 25, 26 (1988). In response, the prosecutor, during his closing argument, declared that the defendant "could have taken the stand and explained it to you." *Id.* The Supreme Court of the United States held that defense counsel's suggestions to the jury had opened the door to the prosecutor's comments. *Id.* at 31-32;[7] *see also Lockett v. Ohio*, 438 U.S. 586 (1978) (holding that where defense counsel informed the jury during opening argument and during the defense case in chief that the defendant would testify, and where defendant did not testify, and where the prosecutor remarked in his closing argument that the evidence was uncontradicted, the prosecutor's comments, taken in context, did not violate defendant's right to remain silent); *Commonwealth v. DiNicola*, 866 A.2d 329, 336 (Pa. 2005) (applying *Robinson*'s fair response doctrine and finding that an investigator's testimony on cross-examination that defendant had invoked his right to remain silent was a fair response to defense counsel's allegations on direct examination that his investigation was flawed.).

Here, the Commonwealth's questioning of Officer Richard about his conversation with Appellant was a fair response to allegations made by Appellant in his opening statement. In his opening statement, Appellant claimed he had a conversation with Officer Richard on the day of the event, in which Appellant denied being the initial aggressor.[8] *See* Trial Tr. 102-103, July 28,

---

[6] Defense counsel in *Robinson* most explicitly referred to the defendant not having an opportunity to explain himself in the statements made to the police during the investigation, but was taken by the Court to refer also to his lack of opportunity to explain himself during the trial. *United States v. Robinson*, 485 U.S. 25, 28 n.2-31 (1988).

[7] "In the present case it is evident that the prosecutorial comment did not treat the defendant's silence as substantive evidence of guilt, but instead referred to the possibility of testifying as one of several opportunities which the defendant was afforded, contrary to the statement of his counsel, to explain his side of the case. . . . [W]here as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege [against compulsory self-incrimination]." *Id.* at 32.

[8] Appellant's opening statement included the following:

> I take it a step further. I said please put the cop on, put the cop n [sic]. I talked to a cop. I believe his name was Officer Richard. I said, listen, what's going on over there? He said this guy said you beat him up with a lock. I said, I didn't beat that guy up with a lock. I said this whole thing is because I demoted him in front of his son, hurt his ego, because I stopped him and confronted him from stealing the wire and because – pretty much trying to have him fired, and because Keith had

2014. Appellant also contended that he had offered to turn himself in to the police. *Id.* at 104.

Appellant offered this information to allow the jury to conclude his innocence. *See id.* ("I called the police officer, I said listen, I'm going to turn myself in. What kind of guilty person does that? Calls the police officer on his personal cell phone number and says I am going to turn myself in.").[9] By including these assertions in his opening statement, Appellant was indicating that he would be offering evidence during trial of the contents of the conversation, presumably through his own testimony and that of Officer Richard. Although Appellant never took the stand, it was only fair that the prosecutor, in response to such allegations, question the officer on their veracity. Appellant cannot ask the jury to conclude innocence based on the contents of a telephone conversation, and then object to evidence of the opposite. *See DiNicola*, 866 A.2d at 336.

Third, the testimony did not offend Appellant's right against self-incrimination because it was not offered as evidence of Appellant's guilt. For example, in *Molina*, the testimony stating that defendant had refused to cooperate with investigators was offered as evidence of the evolution of the investigation. *Molina*, 33 A.3d at 56 ("The revelation of silence in this case was limited to its context. The trooper revealed the exchange with Molina wherein a denial of wrongdoing was immediate, and the decision to engage in further discussion with the trooper was declined. In this situation, the reference to silence was not used in any fashion that was likely to burden Molina's Fifth Amendment right or to create an inference of an admission of

---

to stop the job site and confront him about that. That's why he attacked me. Not the other way around.

So when the police officer tells me, he's saying that you hit him with a lock and we're going to charge you with aggravated assault, possession of an instrument of crime, simple assault, recklessly endangering another person and so on, okay. I said listen, I said this is a little bit too much. I said I'm going to have to call you back.

Trial Tr. 102-03 July 28, 2014.

[9] There is a discrepancy in Appellant's opening statement about how he contacted the police. He first asserted that he called the cell phone of Fred Moligna and asked him to "put the cop on." Moments later, he stated that he called the officer on his personal cell phone. The officer's testimony only alluded to one telephone call.

11

guilt."); *see also Adams*, 104 A.3d at 517 (quoting *DiNicola*, 866 A.2d at 337) ("While we have interpreted the constitutional right against self-incrimination generally to prohibit prosecutors from referencing a defendant's silence as substantive evidence of guilt, this Court has also concluded that the right against self-incrimination is not burdened when the reference to silence is 'circumspect' and does not 'create an inference of an admission of guilt.'").

The prosecutor in the instant case did not refer to Appellant's statements to Officer Richard during her closing argument, let alone instruct the jury to use Appellant's statements to conclude Appellant's guilt. The context was limited to rebutting Appellant's claim that he should be presumed innocent because had offered to turn himself into the police, when, according to the Commonwealth's witness, he had not.

## II. The Commonwealth's reference to Appellant's post-arrest silence was harmless error.

During the Commonwealth's closing argument, the prosecutor alluded to Appellant's decision not to testify. Appellant made a timely objection, which was sustained by the Court.[10]

---

[10] The conversation consisted of the following:

[The Commonwealth]: That is what I told you that I would prove to you during the course of this trial. Ladies and Gentleman, that is what I have proven to you. The defendant made a lot of claims in his opening and closing. Did you see any evidence about the claims that the defendant made? He was attacked first and that he acted in self-defense? Absolutely not, Ladies and Gentleman. There is absolutely no evidence of any of that that came in through this witness stand. The defendant didn't come up onto this witness stand and swear to tell the truth, the whole truth and nothing but the truth like all of my witnesses did. I didn't have a chance to cross-examine the defendant; ask him questions about his story. And sure, the defendant has a right not to take the stand at a criminal trial, but you cannot consider anything that he argued about in his opening and closing—

[Appellant]: Can I object, Your Honor?

The Court: Hold on, Ms. O'Brien.

[Appellant]: I have the right not to take the stand, Your Honor. I object to that.

[The Commonwealth]: Your Honor, I said that.

The Court: But stay away from that argument. So sustained to the point that you are not to consider, Ladies and Gentleman, any election by the defendant not to take the witness stand . He has an absolute right not to testify in his case. Proceed.

[The Commonwealth]: Absolutely, Ladies and Gentleman. The defendant has the right not to testify in this trial, however, the judge is going to instruct you at the close of this, of my argument,

12

Appellant renewed his objection in a post-sentence motion, and now again challenges the prosecutor's statements on appeal. Because the prosecutor's statements constituted harmless error, Appellant should not be granted a mistrial on appeal.

Any reference made at trial to a defendant's post-arrest silence is potentially prejudicial to the defendant, as jurors might interpret a defendant's silence as an implicit admission of guilt. *Commonwealth v. Clark*, 626 A.2d 154, 156 (Pa. 1993) (citing *Commonwealth v. Turner*, 454 A.2d 537, 540 (Pa. 1982)). However, such improper references to post-arrest silence are subject to harmless error analysis. *Commonwealth v. Spotz*, 870 A.2d 822, 833 (Pa. 2005). To rise to the level of reversible error, the remark must be such "that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Ervin*, 766 A.2d 859, 864 (Pa. Super. Ct. 2000); *see also DiNicola*, 866 A.2d at 336-37 (quoting *Commonwealth v. Whitney*, 708 A.2d 471, 478 (Pa. 1998)) ("Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt.").

An error is harmless where the uncontradicted evidence of guilt is so overwhelming, that by comparison the error is insignificant. *Commonwealth v. Mitchell*, 839 A.2d 202, 214 (Pa.

---

that arguments of counsel are just that, they're arguments. They are not evidence. So anything that the defendant argued about to you in his opening and closing. They attacked me first. I acted in self-defense. That is an argument. That is not evidence. And I ask you to please follow the judge's instruction and do not consider that. That did not come in through the witness stand.

Closing Arg. Tr. 34:15-36:10. The prosecutor made similar statements later in her closing argument:

Now, as I told you before, the judge is going to instruct you [sic] the defendant's opening and closing arguments, those are not evidence and you are not to consider them as such. That is exactly what the judge is going to instruct you. The defendant did not swear on the bible to tell the truth in this case. He was not subject to cross-examination. He can't just throw out these theories and not back it up with evidence. There is absolutely nothing to back of the defendant's version of events that he was somehow pummeled by the victim and his son and acted in self-defense. There is no evidence of that.

*Id.* at 46:5-17.

13

2003). An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. *Id.*

A trial court may cure what might otherwise be reversible error by promptly and adequately giving a cautionary instruction to the jury. *See Commonwealth v. Shotwell*, 717 A.2d 1039, 1043 (Pa. Super. Ct. 1998) (quoting *Commonwealth v. Pearson*, 685 A.2d 551, 554 (Pa. Super. Ct. 1996) ("To determine whether a cautionary instruction cured a reference to appellant's post-arrest silence, this Court must consider: '1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction. If the reference to the accused's silence is of a nature that would seriously compromise the jury's objectivity and is likely to deprive the accused of a fair trial, curative instructions are inadequate and a new trial is required.'").

The reference made by the prosecutor to Appellant's *post-arrest silence in the present* case constituted harmless error. In context, the prosecutor's statements were all directed towards alerting the jury that Appellant's opening and closing remarks should not be construed as testimony. Appellant was granted wide leeway during his opening and closing statements, due to his status as a non-lawyer. Typically, arguments made should be supported by the evidence and inferences reasonably derived from that evidence. *Commonwealth v. Ervin*, 766 A.2d 859, 864 (Pa. Super. Ct. 2000). Appellant strayed from this, allowing the jury to be exposed to case theories that had no evidentiary foundation. Additionally, Appellant's choice to represent himself gave him a chance to personally address the jury without being a sworn witness, potentially causing further confusion to jury members, who might be tempted to consider Appellant's arguments as valid testimony.

14

In order to combat these points of potential confusion, the prosecutor thought it necessary to reinforce to the jury that Appellant's statements were not to be considered evidence. This Court agrees with Appellant that the prosecutor may have leaned toward the line of impermissible territory by pointing out that Appellant did not testify. A prosecutor cannot whitewash remarks about a defendant exercising their right to silence by preceding them with the comment "And sure, the defendant has a right not to take the stand at a criminal trial, but . . ." Closing Arg. Tr. 35:5-6, July 30, 2014.

However, the prosecutor did not use her statements to imply Appellant's guilt. She did not suggest that Appellant did not take the stand because he had something to hide. Her comments revolved around the claims made in Appellant's opening and closing arguments and the fact that they were not to be construed as evidence. Such remarks did not exploit Appellant's silence and would not create within the jury "fixed bias and hostility towards the defendant," *Ervin*, 766 A.2d at 864, or suggest to the jury that Appellant's silence was a tacit admission of guilt. Furthermore, the Court promptly and adequately instructed the jury not to consider Appellant's decision not to testify, and there was overwhelming uncontradicted evidence of Appellant's guilt, as Appellant put on no evidence in his own defense. Therefore, the prosecutor's remarks that Appellant's statements were not to be construed as evidence because Appellant did not testify should be deemed harmless error.

III.    The Court did not abuse its discretion in admitting into evidence a demonstrative padlock, handkerchief, and photographs.

Appellant argues against the admission into evidence of a demonstrative padlock and handkerchief, and photographs of Complainant's injuries. The Commonwealth initially presented a motion in limine for the admission of the padlock and handkerchief, which was granted,

15

contingent upon the Commonwealth's foundation and upon Appellant's objections at the time of admission. Trial Tr. 23:12-26:7, July 28, 2014. When the Commonwealth introduced the padlock as exhibit C-2, Appellant objected, because "There was never a lock. There was never a bandana. And there certainly wasn't one recovered." Trial Tr. 23:4-7, July 29, 2014. After the witness established that the demonstrative padlock was the same size, type, and brand of padlock that he was describing in his testimony, *id.* at 22:15-24:14, Appellant objected to its being published to the jury because he believed it was "inflammatory, prejudicial and it can be used to inflame the jury." *Id.* at 24:19-20. The Court questioned the witness further on his knowledge of the padlock before overruling the objection and allowing publication to the jury. *Id.* at 24:21-26:10. Introduction and publication of the demonstrative bandana, C-3, went much the same. *Id.* at 26:11-27:21.

Appellant also objected to the introduction of C-11 through C-14, photographs taken of Complainant's injuries by his wife.[11] Trial Tr. 40:7-42:9, July 29, 2014. Appellant argued that the photos should not be admitted into evidence, asking "Is his wife here? How do we really know that she's really the one who took the pictures, or when they were taken," and "For all we know, they could have been taken three months after. There is no time, there is no date on them." *Id.* at 40:13-14, 41:24-42:3. Appellant's objections were overruled. *Id.* at 42:4-8.

During the jury's deliberation, the foreman sent a message to the Court requesting that all exhibits be sent to the jury room. Trial Tr. 53:2-6, July 31, 2014. Regarding the photos, Appellant objected to their return to the jury on the grounds that the photos would be inflammatory. *Id.* at 54:2-4. The Court overruled his objection, noting that Appellant had not

---

[11] Appellant did not object to the introduction of C-4 through C-10, photographs of Complainant's injuries taken by the police. Trial Tr. 32:2-33:6, 35:20-36:24, 38:3-39:4, July 29, 2014. Appellant also argued against the admission of photographs he received on the day of trial, on the grounds that they were late discovery. *See* Trial Tr. 36-38, July 28, 2014. However, it is unclear on the record which photographs Appellant received in an untimely manner, and Appellant does not include this argument in his Concise Statement.

16

made this objection during the trial, but had in fact used the photos himself, in an attempt to prove that his own blood was shed during the incident, a point which Appellant conceded on the record. *Id.* at 54:8-21. The Court did not allow the demonstrative padlock and handkerchief to return to the jury room. *Id.* at 54:23-55:22, 58:10-59:2. In his post-sentence motion, Appellant renewed his argument that the padlock, handkerchief, and photographs were prejudicial and inflammatory and that the photographs taken by Complainant's wife were not properly authenticated.

A.    The Demonstrative Padlock and Handkerchief

The purpose of demonstrative evidence is "rendering other evidence more comprehensible to the trier of fact." *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006). As with any other evidence, demonstrative evidence must be properly authenticated, it must be relevant, and its probative value must outweigh its prejudicial effect. *Id.* Evidence is properly authenticated when its proponent produces evidence sufficient to support a finding that the item in question is what the proponent claims it is. Pa. R. E. 901(a). "Demonstrative evidence such as photographs, motion pictures, diagrams, and models have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict." *Serge*, 896 A.2d at 1177. The authenticating witness need not have prepared the exhibit, but must simply have sufficient knowledge to authenticate it. *Commonwealth v. Rogers*, 615 A.2d 55, 61 (Pa. Super. Ct. 1992); *see, e.g., Commonwealth v. Reid*, 811 A.2d 530, 552-553 (Pa. 2002) (allowing a demonstrative photograph of a gun where the witness testified that it was similar to the gun that was sold to defendant and where she had adequate knowledge to authenticate it).

17

Evidence is deemed relevant when it has "any tendency to make the existence of the fact that is of consequence to the determination of the action more probable or less probable than would be without the evidence." Pa. R. E. 401; *compare Commonwealth v. DelMarmol*, 214 A.2d 264, 267 (1965) (holding that pen knife was irrelevant evidence when no one testified to its existence and it was found at the scene of defendant's arrest, three days later), *and Commonwealth v. Nutter*, 389 A.2d 626, 628 (Pa. Super. Ct. 1978) (finding that flashlight and lottery tickets should be admitted when found on defendant's possession and within the burglarized premises, and where restaurant manager testified that they were missing from their usual location).

However, relevant and authenticated evidence is to be excluded "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." Pa. R. E. 403; *compare Commonwealth v. Maisonet*, 31 A.3d 689, 698 (Pa. 2011) (holding that introduction of America's Most Wanted videotapes was overly inflammatory), *with Serge*, 896 A.2d at 1177 (computer-generated animation to illustrate Commonwealth's theory of how defendant committed murder was not overly prejudicial where it was devoid of drama). The admission of demonstrative evidence is a matter within the discretion of the trial judge, and will not be overturned absent an abuse of that discretion. *Commonwealth v. Ford*, 301 A.2d 856, 858 (Pa. 1973); *accord Maisonet*, 31 A.3d at 697.

In the instant case, the Commonwealth produced two witnesses which testified to the existence of a padlock and bandana which had been used to strike Complainant and then discarded on the passenger side of Fred's truck. Two other witnesses testified that they did not see a padlock or bandana, but that they also did not see how the fight began. The investigating officer testified that no padlock was recovered from the scene of the incident, which included

18

search of Appellant's vehicle. Clearly, whether the padlock and bandana ever existed was relevant and was a factual question to be put before the jury. Complainant properly authenticated the demonstrative padlock by testifying to its size, shape, and brand. The padlock and bandana were not contraband, but household items. They were not dramatic, terrifying, or otherwise disposed towards a "likelihood of inflaming the minds and passions of the jurors." *Commonwealth v. Powell*, 241 A.2d 119, 121 (Pa. 1968). The Court did not abuse its discretion in admitting the demonstrative items into evidence.

B.      The Photographs of Complainant's Injuries

While Appellant made a timely objection to the admission of C-11 through C-14 on the grounds that the photographs were not properly authenticated,[12] Appellant failed to object to the introduction into evidence of any photographs on the grounds that they were prejudicial and inflammatory. By failing to make a timely objection, Appellant has waived his right to so object.[13] *Molina*, 33 A.3d at 55. Also, as the Court noted on the record, Appellant used the exhibits to his advantage, to impeach the witness by showing his own blood and Complainant's ripped shirt.

Regarding the admission of C-11 through C-14, the photographs taken by the Complaiant's wife, Appellant's challenge to their authentication fails. "A photograph must be verified either by the testimony of the person who took it or by another person with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time of the accident." *Nyce v. Muffley*, 119 A.2d 530, 532 (Pa. 1956); *accord*

---

[12] By questioning who took the photos, and when, Appellant is attacking their authenticity.

[13] The Court notes, however, that had Appellant made a timely objection, the photographs would still likely have been admitted. They show minimal amounts of blood and no severely disturbing images, and they were necessary to proving the degree of harm. *Compare Commonwealth v. Ford*, 301 A.2d 856, 858-59 (Pa. 1973) (photographs showing stab wounds were admissible to show use of a deadly weapon on a vital part of the body in order to infer an intent to kill), *and Rogers*, 615 A.2d at 61 (where there was no question before the jury as to the degree of harm, gruesome photos were overly inflammatory).

19

*Commonwealth v. McKellick*, 24 A.3d 982, 995 (Pa. Super. Ct. 2011) ("A photograph is merely pictorial testimony.... It is common knowledge that a given condition may be so photographed from different angles as to produce conflicting views of the situation under the camera's lens... .We are to remember, then, that a document purporting to be a map, picture, or diagram, is, for evidential purposes simply nothing, except so far as it has a human being's credit to support it.") (internal quotations omitted).

The witness properly authenticated photos C-11 through C-14.[14] It was the task of the jury to weigh the witness's testimony and determine whether the photos represented truthful depictions of the injuries the witness actually sustained. The Court did not abuse its discretion in admitting the authenticated photographs into evidence.

## IV. There was sufficient evidence to sustain a conviction for Aggravated Assault, Simple Assault, and REAP, and to find that Appellant did not act in self-defense.

Appellant argues that there was insufficient evidence to sustain a conviction for the charges of Aggravated Assault, Simple Assault, and REAP. Specifically, Appellant argues that the Commonwealth did not prove beyond a reasonable doubt that he acted with the necessary intent and that he did not act in self-defense. At the close of the Commonwealth's case, Appellant made a trial objection to the legal sufficiency of the evidence. *See* Trial Tr. 70:17-20,

---

[14] The foundation was laid during trial as follows:
[The Commonwealth]: Now showing you C-11 through C-14. Are those the pictures that your wife took of your rib cage that day?
[Witness]: Yes, they are.
[The Commonwealth]: Are those a fair and accurate depiction of the injury to your rib –
[Witness]: Yes.
[The Commonwealth]: - as it appeared that day?
[Witness]: Yes.
[The Court]: "That day" being the 6th?
[Witness]: 6th of September.

July 30, 2014 ("No, Your Honor, I have no witnesses but at this time I would ask for an acquittal of all charges based on the lack of evidence.").

To judge a claim of insufficiency of evidence, an appellate court must determine whether "the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Fears*, 836 A.2d 52, 58-59 (Pa. 2003). The Commonwealth may prove all elements beyond a reasonable doubt through the use of wholly circumstantial evidence. *Id.* The evidence is sufficient "unless the proof relied upon for a conviction is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Rawles*, 462 A.2d 619, 622 (Pa. 1983). The trier of fact is "free to believe all, part, or none of the evidence." *Commonwealth v. Burton*, 2 A.3d 598, 601 (Pa. Super. Ct. 2010) (quoting *Commonwealth v. Galvin*, 985 A.2d 783, 789 (Pa. 2009)). Evidentiary sufficiency presents a question of law. Therefore, the appellate court's standard of review is de novo, and its scope of review is plenary. *Commonwealth v. Meals*, 912 A.2d 213, 218 (Pa. 2006).

A.    Aggravated Assault

A person can be properly found guilty of aggravated assault when the Commonwealth proves beyond a reasonable doubt that he "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S.A. § 2702(a)(1). Appellant has challenged only the sufficiency of evidence surrounding the element of mens rea, or criminal intent. Therefore, this Court focuses its analyses on the sufficiency of the evidence that Appellant

21

acted intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life, and not whether Complainant sustained serious bodily injury caused by Appellant.

The Pennsylvania Crimes Code defines each of the above mental states in section 302. It says that a person acts "intentionally" when "it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i). Section 103 further states that the words and phrases "with intent," "designed," and "with design" have the same meaning. 18 Pa.C.S.A. § 103. A person acts "knowingly" when "he is aware that it is practically certain that his conduct will cause such a result." 18 Pa.C.S.A. § 302(b)(2)(ii). Finally, a person acts "recklessly" when

> he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

The mental state required for aggravated assault was further elucidated by our Supreme Court in *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978):

> The Court announced that the following factors can be utilized in ascertaining whether the defendant intended to inflict serious bodily injury by one blow: 1) if the defendant "was disproportionately larger or stronger than the victim;" 2) whether the defendant would have escalated his attack but was restrained from doing so; 3) whether the defendant was in possession of a weapon; and 4) "statements before, during, or after the attack which might indicate [defendant's] intent to inflict further injury upon the victim."

*Commonwealth v. Burton*, 2 A.3d 598, 602 (Pa. Super. Ct. 2010) (quoting *Alexander*, 383 A.2d at 889).

22

Although Appellant's view of the incident differs from that presented by the Commonwealth at trial, when viewing the evidence and all the reasonable inferences drawn from therein in the light most favorable the Commonwealth, it is clear that the evidence presented was sufficient to enable a fact-finder to conclude beyond a reasonable doubt that Appellant had the requisite mental intent to commit aggravated assault. The Commonwealth presented Complainant and an eye-witness, both of which testified under oath that Appellant had struck Complainant in the face with a padlock wrapped in a bandana. Believing the Appellant to have armed himself with such a weapon, the jury could reasonably have drawn an inference that Appellant had intended to cause serious bodily injury, or had at least acted with reckless disregard for Complainant's life. *See, e.g. Commonwealth v. Patrick*, 933 A.2d 1043 (Pa. Super. Ct. 2007) (holding that a punch to the head on an unsuspecting victim was sufficient to establish reckless indifference necessary for a prima facie case of aggravated assault); *Commonwealth v. Wright*, 832 A.2d 1104, 1110 (Pa. Super. Ct. 2003) (finding that the evidence "plainly satisfies the standard for sufficiency" for a conviction of aggravated assault and recklessly endangering another person where the appellant's testimony about the shooting contradicted that of the victim's and two eye-witnesses); *see also Burton*, 2 A.3d at 603-05 .

B.    Simple Assault

A person can be properly found guilty of simple assault when the Commonwealth proves beyond a reasonable doubt that he "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another" 18 Pa. C.S.A. § 2701(a)(1). Simple assault is a lesser included offense of aggravated assault, and therefore as there is sufficient evidence was presented to prove aggravated assault, there was sufficient evidence to prove simple assault as a matter of course. *Commonwealth v. Calhoun*, 52 A.3d 281 (Pa. Super. Ct. 2012). Also, Appellant concedes that at

23

the very least he punched Complainant (albeit in self-defense). Viewing the evidence presented at trial in the light most favorable to the Commonwealth, a fact-finder could therefore find beyond reasonable doubt that Appellant's actions were intended to cause bodily injury to Complainant. *See, e.g. Commonwealth v. Torres*, 766 A.2d 342, 344-45 (Pa. 2001) (finding the evidence sufficient to establish simple assault where defendant acknowledged that he intentionally struck the victim.).

## C. REAP

A person can be found guilty of REAP when the Commonwealth proves beyond a reasonable doubt that he "recklessly engage[d] in conduct which place[d] or may [have] place[d] another person in danger of death or serious bodily injury." 18 Pa. C.S.A. § 2705. Viewed in the light most favorable to the Commonwealth, the evidence is sufficient to prove beyond a reasonable doubt that Appellant intended to swing a heavy metal object at Complainant's head. His action caused severe bodily injury to Complainant by breaking his jaw, and placed him in danger of losing an eye. The evidence presented by the Commonwealth was sufficient to prove that Appellant had the requisite mental state to commit REAP.

## D. Self-Defense

Section 505 of the Pennsylvania Crimes Code outlines when it is justifiable to use force against another person in the interest of self-protection.[15] *See* 18 Pa. C.S.A. § 505. A defendant

---

[15] § 505. Use of force in self-protection
(a) Use of force justifiable for protection of the person.—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
(b) Limitations on justifying necessity for use of force. . . .
    (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
        (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

24

has no burden to prove he acted in self-defense. *Commonwealth v. Smith*, 97 A.3d 782, 786 (Pa. Super. Ct. 2014). But before the issue of self-defense may be submitted to a jury for consideration, there must be some evidence, from whatever source, to justify a finding of self-defense. *Commonwealth v. Mayfield*, 585 A.2d 1069, 1070-71 (Pa. Super. Ct. 1991). "Such evidence may be adduced by the defendant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination." *Commonwealth v. Rose*, 321 A.2d 880, 884 (Pa. 1974).

The Commonwealth carries the burden to prove beyond a reasonable doubt that the defendant was not acting in self-defense, and can carry that burden by establishing either that: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *Smith*, 97 A.3d at 787. The defendant must have had both a subjective belief that he was in imminent danger, and an objectively reasonable belief that the use of force was necessary to protect against death or serious bodily injuries. *Id.* The reasonableness of a defendant's belief can be determined by considering such factors as "whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident." *Id.* at 788. The defendant also must not have "used more force than reasonably necessary to protect

---

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be. . . .

(3) Except as otherwise required by this subsection, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating, surrendering possession, doing any other act which he has no legal duty to do or abstaining from any lawful action. . . .

18 Pa. C.S.A. § 505.

against death or serious bodily injury." *Id.* Finally, the defendant "must be free from fault in provoking or escalating the altercation that led to the offense." *Id.*

A fact-finder is not required to believe the testimony of a defendant who raises the claim of self-defense. *Id.* However, disbelief of defendant's testimony alone will not afford enough affirmative proof to disprove the claim. *Commonwealth v. Torres,* 766 A.2d 342 (Pa. 2001) (finding that there was insufficient evidence to disprove defendant's self-defense claim where the Commonwealth's case did not provide evidence of who the initial aggressor was, or a motive for the defendant to be the initial aggressor). The testimony Complainant as a witness to the incident is sufficient to refute a self-defense claim. *Smith,* 97 A.3d at 788. It is the province of the fact-finder to weigh the affirmative evidence provided by the Commonwealth and decide if it proves beyond a reasonable doubt that the defendant was not acting in self-defense. *Commonwealth v. Mayfield,* 585 A.2d 1069, 1071 (Pa. Super. Ct. 1991) (quoting *Commonwealth v. Rose,* 344 A.2d 824, 826 (Pa. 1975)); *see, e.g. Commonwealth v. Brown,* 648 A.2d 1177, 1182 (Pa. 1994) ("Appellant's attack on the sufficiency of the evidence is, in essence, a spurious claim that if his version of events were given credence, he killed in self-defense. In view of the conflicting physical evidence and expert testimony, and in view of the inconsistency of appellant's accounts, it is understandable that the jurors did not credit appellant's testimony. There was more than sufficient evidence to prove every element of the offense and to disprove the self-defense claim beyond a reasonable doubt.").

In the case *sub judice*, there was sufficient evidence for the jury to conclude that Appellant was not acting in self-defense. The Commonwealth produced two witnesses which claimed that Appellant was the sole aggressor, and was not in fear of serious bodily injury. The Commonwealth's witnesses also asserted that Appellant was armed and verbally threatened

26

Complainant before the encounter,[16] whereas Complainant was unarmed. A fact-finder could reasonably infer from this evidence that Appellant was not acting in self-defense.

## V.     The verdict was not against the weight of the evidence.

Appellant asserts that the verdict returned by the jury was against the weight of the evidence presented at trial. Appellant preserved this claim by raising it with the trial court.[17] Pa. R. Crim. P. 607(A).

On a motion for a new trial based on a challenge to the weight of the evidence, the trial court is not obligated to view evidence in the light most favorable to the verdict winner. *Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa. Super. Ct. 2004) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000)). Nor is a judge to sit as thirteenth juror and make her own determination of guilt or innocence, nor is she to grant the motion for a new trial based on a mere conflict in testimony. *Id.*; *see, e.g., Commonwealth v. Sanchez*, 36 A.3d 24, 25-29 (Pa. 2011) (finding that guilty verdict was not against weight where evidence was neither so unreliable nor contradictory to undermine the verdict, questions of co-defendants' motives were classic issues of credibility to be decided by the jury, co-defendants consistently identified defendant as the shooter, and defendant's confession corroborated the identification). Rather, the trial court may grant a new trial because the verdict is against the weight of the evidence only when the verdict rendered is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

---

[16] One of the Commonwealth's witnesses also asserted that Complainant threatened Appellant after the attack.

[17] "[Appellant]: No, Your Honor, I have no witnesses but at this time I would ask for an acquittal of all charges based on the lack of evidence." Trial Tr. 70:17-20, 74:17-21, July 30, 2014. This objection could be more properly considered a challenge to the sufficiency of the evidence, rather than the weight, but Appellant more clearly raised a challenge to the weight of the evidence in his post-sentence motion. *See* Pa. R. Crim. P. 607.

*Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa. Super. Ct. 1997) (quoting *Thompson v. City of Philadelphia*, 493 A.2d 669, 672 (Pa. 1985)).

An appellate court does not judge whether the verdict was against the weight of the evidence, but is limited to a review of whether the trial court palpably abused its discretion in ruling on the weight claim. *Commonwealth v. Lewis*, 911 A.2d 558, 666 (Pa. Super. Ct. 2006). A trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings. *Commonwealth v. Diggs*, 949 A.2d 873 (Pa. 2008).

In the instant case, the jury was presented with testimony of Complainant, an eye witness, two other witnesses, and an investigating officer. Very little of the testimony was contradictory and favorable to Appellant. For example, Complainant said he didn't talk to Appellant on September 5, 2014, regarding the wire, whereas another witness, Keith, said that he had. Complainant may also have waivered in prior statements on how many times he was struck by Appellant. One witness, Fred, heard Shawn threaten Appellant after the altercation and testified that, contrary to Shawn's testimony that he tried to break up the fight, Shawn was "on top of the pile." Also, according to some of the Commonwealth's witnesses, Appellant did have at least a minor cut and a torn shirt, despite Complainant's testimony that he did not strike Appellant. Notably, no lock or bandana were recovered.

However, this Court was not obligated to view any of the above conflicting evidence in the light most favorable to Appellant. *Smith*, 853 A.2d at 1028. Rather, to overturn the jury's verdict, the evidence must have enough weight to render the verdict shocking to one's sense of justice. *Goodwine*, 692 A.2d at 236. Given the amount of uncontradicted evidence presented by the Commonwealth that Appellant was the sole aggressor, the severity of the injuries sustained by Complainant, Appellant's potential access to the truck after the altercation, and Fred's

testimony that he heard Shawn say to Appellant, "What did you hit [Complainant] with?" at the time of the incident, the undersigned did not find that the verdict of guilty to be shocking to one's sense of justice.

## VI. The reference to a pretrial photographic lineup was harmless error.

After the incident on September 6, 2012, but before Appellant had been arrested, the police showed a lineup of photographs to Complainant in order to verify Appellant's identity. The photographs used in the lineup, including that of Appellant, were photographs of prior offenders that the police had on file.

On April 4, 2014, Appellant filed a Motion in Limine to suppress any references to the pretrial photo lineup from being made to the jury. Appellant's motion was argued before the commencement of trial, at which point the Commonwealth indicated that the photographic lineup would most likely not be referenced. The undersigned indicated that a definitive ruling on the matter would be deferred, but that a reference to the lineup would probably not be allowed at trial. Pretrial Motions Tr. 68:22-72:4, July 23, 2014.

On direct examination, the Commonwealth asked Complainant why he had returned to the police station after going to the hospital. Complainant answered, "At that point, an officer from the Whitpain Township police contacted my telephone and asked me if I could come back to look at a lineup, a photo lineup to identify the defendant." Trial Tr. 37:13-16, July 29, 2014. Appellant made an objection, which was sustained, and the Commonwealth proceeded to a new line of questioning.

When inadmissible evidence is introduced at trial, a reversal is warranted only upon a showing of actual prejudice. *Commonwealth v. Sweger*, 505 A.2d 331, 334 (Pa. Super. Ct. 1986).

29

"A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to have deprived the moving party of a fair and impartial trial." *Commonwealth v. Tharp*, 830 A.2d 519, 532-33 (Pa. 2003). A decision denying a mistrial will only be reversed if the trial court committed an abuse of discretion in denying the request. *Sweger*, 505 A.2d at 334

The identity of Appellant, who had worked alongside Complainant and who admitted to being involved with the altercation, has never been in question. The photographic lineup was therefore irrelevant to the Commonwealth's case, and testimony regarding the lineup was properly not before the jury. Appellant, however, was not prejudiced by this remark and this Court therefore properly denied his request for a mistrial. While Complainant stated before the jury that he had been called in to the station to consider a photographic lineup, he did not testify that he ever actually saw the lineup, that Appellant's photograph was included in the lineup, or how a photographic lineup works. It is unlikely that the jury members would know the police procedure of using photographs from prior arrests, or understood that such a photograph of Appellant was used by the police in this case. Certainly no direct reference was made to Appellant's criminal history. Appellant therefore suffered no prejudice, and this Court did not abuse its discretion in so finding.

## VII. The Commonwealth did not suppress material, exculpatory evidence.

Appellant contends that the Commonwealth withheld video surveillance recorded by the Giant supermarket. Appellant believes the video would have been beneficial to Appellant's defense. Appellant entered the Giant immediately after the incident, and alleges that the video would show him calmly walking through the aisles, and therefore rebut any testimony that indicated he fled the scene to avoid capture.

Appellant's challenge was preserved at the trial level. On March 27, 2013, the Office of the Public Defender submitted a request for discovery pursuant to Rule 573 of the Pennsylvania Rules of Criminal Procedure on Appellant's behalf. The request included general language covering "All transcripts and recordings of any electronic surveillance and the authority by which the said transcripts and recordings were obtained" and "The date, time and place of every occasion and search, surveillance, electronic surveillance, mechanical, visual or aural surveillance and reports related thereto." On January 27, 2014, Appellant filed a *pro se* motion to compel all discovery "intended on being used at the time of trial." After the close of testimony, Appellant moved for a mistrial because he had never received a copy of the video surveillance. The motion was denied. Trial Tr. 80:23-86:14, July 30, 2014.

Appellant essentially argues that the Commonwealth is in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which requires the Commonwealth to provide defense with evidence in its possession that is favorable to the defense and material to guilt or punishment. *Id.* at 87. This rule is embodied in Rule 573 of the Pennsylvania Rules of Criminal Procedure, which states

> In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
> (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth . . .

Pa. R. Crim. P. 573(B)(1)(a). Our Supreme Court has explained that this rule is breached when a defendant shows that "(1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it

31

could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." *Commonwealth v. Willis*, 46 A.3d 648, 656 (Pa. 2012). Appellant's argument fails on all three points.

First, the evidence was not suppressed by the state. When asserting a Brady claim, the burden rests with the defendant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. *Commonwealth v. Roney*, 79 A.3d 595 (Pa. 2013). While the officer testified that he viewed the footage while searching the store for Appellant,[18] the police never retrieved the video from the Giant, and the District Attorney's office never received a video from the police. This does not count as evidence "within the possession or control of the attorney for the Commonwealth" under Rule 573. Furthermore, no Brady violation occurs where the evidence is available to the defense through non-governmental sources, or, with reasonable diligence, the defendant could have discovered the evidence. *Commonwealth v. Carson*, 913 A.2d 220, 245 (Pa. 2006).

Second, the evidence was not exculpatory to Appellant. There were limited facts presented to the jury about Appellant's actions after the incident, but it is not disputed that Appellant was told to leave the scene,[19] that Appellant went to the Giant, and that Appellant did not return to the scene afterwards. Appellant contends that this casual and meandering interlude after the incident, along with his leaving his belongings in the truck, negates any inference that he fled the scene due to guilt[20]—a theory that Appellant was first to bring up in his opening

---

[18] "[Officer Richard]: When we went looking for [the defendant] we went over to the Giant, we just checked the footage to see if he actually went into the Giant." Trial Tr. 82:6-9, July 30, 2014.

[19] This was asserted to in the Commonwealth's opening and was included in Fred's testimony.

[20] The following three exchanges took place on cross-examination of Officer Richard:

[Appellant]: Isn't it true that I left my belongings in the truck when I went to the store?
[Officer Richard]: Yes.
[Appellant]: Now, I left my medication, I left my car keys, my house keys, and my tools, correct? They were in the work bag?
[Officer Richard]: I can only recall the tools and the prescription bottles.

32

statement.[21] However, no matter how pleasant and peaceful a shopping experience the Appellant enjoyed in the Giant that day, it does not controvert the fact that Appellant did not return to the scene to talk to the police. The video footage would not show otherwise.

Third, the evidence is not material to the extent of causing prejudice to Appellant. As explained by our Supreme Court:

> [T]he mere possibility that an item of undisclosed information *might* have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Rather, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Willis*, 46 A.3d at 656 (internal quotations and citations omitted). Had the tape been procured and admitted, it would not have affected the outcome of the trial. Appellant's supervisor testified that

---

[Appellant]: And in your experience, don't people who usually commit a crime grab everything they can and get out of Dodge? . . .
[Officer Richard]: In my expertise, that somebody who would commit a crime would want to leave the scene as fast as possible and would leave anything they can behind just to get out of the way, just to get out of there.
[Appellant]: And I did walk to the Giant store not too far away, correct?
[Officer Richard]: I don't know how you got out of there.
Trial Tr. 57:11-58:10, July 30, 2014.

[Appellant]: Yes or no: Did you observe me on the video footage walking up and down the aisles of the Giant store that was right there?
[Officer Richard]: I believe I can vaguely recall checking the security footage, and I believe I saw you on one of the videos in one of the aisles. That's what I can recall.
[Appellant]: And it was right there, not too far away from the truck, correct?
[Officer Richard]: What?
[Appellant]: The store?
[Officer Richard]: It's a good distance from the parking lot.
[Appellant]: So I didn't really take off then, did I?
[Officer Richard]: I don't know how you got there, sir.
*Id.* at 58:11-59:2.

[Appellant]: I left my belongings in the truck, correct?
[Officer Richard]: Yes.
[Appellant]: Including my medication and tools, correct?
[Officer Richard]: Yes.
[Appellant]: So doesn't that show you that I really had no intentions of taking off? I left my belongings. . . .
[Officer Richard]: I don't know what your motivation was for leaving.
*Id.* at 69:8-16.
[21] In his opening statement, Appellant alleged that after he was told by his supervisor to leave the premises, he went to the Giant for peroxide, etc., he exited, spotted police vehicles, learned via a telephone call to Fred and Officer Richard that he was being charged with several crimes, and decided not to return to the scene because he needed to prepare for the care for his children in the event that he was arrested. Trial Tr. 101:10-104:15. July 28, 2014.

he told Appellant to leave. Complainant even testified that he himself had initially left the scene, until told by a 911 operator to return. The jury was not instructed on evidence of flight or any inference to be drawn from therein. It is unlikely that they doubted what Appellant claims occurred during his shopping trip, even without his having taken the stand. Appellant has not carried his burden of demonstrating a Brady violation by the Commonwealth.

**VIII. Imposition of the statutory minimum sentence was proper.**

Appellant was sentenced according to Pennsylvania's "second strike" statute, which says

> Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement . . .

42 Pa. C.S.A. § 9714(a). Because Appellant was convicted of Aggravated Assault, which is included under the statute as a "crime of violence," and because Appellant had previously been convicted of Robbery and Burglary under 42 Pa. C.S.A. § 3701 and 42 Pa. C.S.A. § 3502, also deemed as crimes of violence per 42 Pa. C.S.A. § 9714, Appellant's conviction for Aggravated Assault constituted a second strike under the law, and Appellant was accordingly sentenced to ten to twenty years' imprisonment.

Appellant contends that the mandatory minimum sentence imposed by this statute is unconstitutional according to the holding of *Alleyne v. United States*, 133 S. Ct. 2151 (2013). *Alleyne* held that any fact that triggers the imposition of a mandatory minimum sentence must be treated as an element of the offense and therefore included within the charging document and submitted to the jury to find beyond a reasonable doubt. Appellant included this argument in his motion for reconsideration.

34

*Alleyne*, however, carved out an exception for mandatory minimum sentences based on prior convictions. 133 S.Ct. at 2151 n.1. This exception has been implemented numerous times since the *Alleyne* decision. *See, e.g., Commonwealth v. Miller*, 102 A.3d 988, 995 n.5 (Pa. Super. Ct. 2014), *reargument denied* (Dec. 5, 2014). Therefore, imposition of the mandatory minimum sentence was proper, despite the fact that the jury did not find beyond a reasonable doubt that Appellant had been previously convicted.[22]

## IX. Appellant's judgment of restitution was proper.

As a condition of his sentence, Appellant was ordered to pay restitution amounting to $9,782.38. Appellant maintains that he should not be held to pay restitution because Complainant's hospital bills were not introduced into evidence.

In a criminal proceeding, an order of restitution is a sentence. The Pennsylvania Crimes Code provides for orders of restitution in section 1106, which states:

> Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

18 Pa. C.S.A. § 1106(a). The code also explains that in determining the amount of restitution the court shall consider the extent of the injury suffered by the victim as presented by the district attorney. *See* 18 Pa. C.S.A. § 1106(c)(2)(i),(4). "When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime." *Commonwealth v. Kinnan*, 71 A.3d 983, 986 (Pa. Super. Ct. 2013). Where a restitution order has ·

---

[22] It would be nonsensical to submit the facts of a prior conviction to a jury for consideration, when a defendant has already been found guilty on those facts (or pleaded guilty). In other words, Appellant does not currently have the right to insist that this second jury find him guilty of his prior Robbery and Burglary charges.

35

been challenged on the basis that it is unsupported by the record, it is a challenge to the legality of the sentence, and therefore the standard of review on appeal is plenary. *Id.*

The amount of restitution that Appellant was ordered to pay was suggested to the Court by the Commonwealth, as provided for in § 1106. The prosecutor stated at the sentencing hearing that the restitution amount came from medical bills dating from the time of the offense. Sentencing Tr. 28:20-32:2, Nov. 25, 2014. Three medical bills were examined by the Court.[23] Complainant had to undergo several medical procedures, including getting stitches in his ear and having his jaw wired shut. The order of restitution was proper and supported by the record.

## CONCLUSION

For all of the aforementioned reasons, this Court's order should be affirmed.

BY THE COURT:

GARRETT D. PAGE,      J.

Copies of the above Opinion
Mailed on __2-10-15__
**By First-Class Mail:**
Giovanni Mucci, Pro Se, Appellant
**By Inter-Office Mail:**
Anne Schools, Court Administration
Montgomery County District
  Attorney- Appellate Division

Judicial Secretary

---

[23] There was a bill for $951 for the ambulance, which showed the date of service as September 6, 2012 (the date of the incident). There were two bills for Mercy Suburban Hospital, one of which was for $7,401, and which showed the date of service as September 6, 2012, the date of the incident.

36